1  WILLIAM BLUMENTHAL
   General Counsel
2
   PATRICIA POSS
3  QUISAIRA A. WHITNEY
   Federal Trade Commission
4  600 Pennsylvania Avenue, NW, H-238
   Washington, DC  20580
5  (202) 326-2413; 2351 / (202) 326-3395 (fax)
   pposs@ftc.gov, qwhitney@ftc.gov
6  For Plaintiff Federal Trade Commission

7
   BILL LOCKYER
8  Attorney General of the State of California
   ALBERT NORMAN SHELDEN
9  Senior Assistant Attorney General
   MARGARET REITER
10 Supervising Deputy Attorney General

11 IAN K. SWEEDLER (169969)
   Deputy Attorney General
12 Office of the Attorney General
   455 Golden Gate Avenue, Suite 11000
13 San Francisco, CA 94102
   (415) 703-5597 / (415) 703-5480 (fax)
14 ian.sweedler@doj.ca.gov
   For Plaintiff State of California

15
                    **UNITED STATES DISTRICT COURT**
16                **NORTHERN DISTRICT OF CALIFORNIA**
                         **San Francisco Division**
17 _____
   FEDERAL TRADE COMMISSION, and )
18                                )
   THE PEOPLE OF THE STATE        )
19 OF CALIFORNIA,                  )
                                   )
20            Plaintiffs,          )
                                   )      CV No.
21        v.                        )
                                   )
22 OPTIN GLOBAL, INC., a Delaware   )
   Corporation, also doing business as )
23 Vision Media Limited Corp., USA Lenders )   **COMPLAINT FOR**
   Network, USA Lenders, and USA Debt )       **INJUNCTION, DAMAGES,**
24 Consolidation Service;           )          **CIVIL PENALTIES AND OTHER**
                                   )          **EQUITABLE RELIEF**
25 VISION MEDIA LIMITED CORP.,      )
   a Commonwealth of Dominica Corporation, )
26 also doing business as Optin Global, Inc., )
   USA Lenders Network, USA Lenders, and )

1   USA Debt Consolidation Service;          )
                                             )
2   RICK YANG, also known as Qing            )
    Kuang Yang, individually, and as principal )
3   and owner of Vision Media Limited Corp.  )
    and Optin Global, Inc.; and              )
4                                            )
    PEONIE PUI TING CHEN, individually,      )
5   and as president of Optin Global, Inc.;  )
                                             )
6                          Defendants.       )
    _____ )

7

8          Plaintiffs, the Federal Trade Commission ("FTC" or the "Commission") and the People

9   of the State of California, for their complaint allege as follows:

10  1.     The Commission brings this action under Sections 13(b) and 19 of the Federal Trade

11         Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b (2004), and Sections 7(a)

12         (d) of the Controlling the Assault of Non-Solicited Pornography And Marketing Act of

13         2003 ("CAN-SPAM Act"), 15 U.S.C. § 7706(a) and (d) (2004), to obtain temporary,

14         preliminary, and permanent injunctive relief, rescission of contracts, restitution, redress,

15         disgorgement, and other equitable relief for Defendants' violations of Section 5(a) of the

16         FTC Act, 15 U.S.C. § 45(a) (2004) and Section 5(a) of the CAN-SPAM Act, 15 U.S.C.

17         § 7704(a) (2004).

18  2.     The People of the State of California bring this action under Section 7(f) of the CAN-

19         SPAM Act, 15 U.S.C. § 7706(f) (2004), and Sections 17200 *et seq.*, 17529.5, 17535, and

20         17536 of the California Business and Professions Code to obtain temporary, preliminary,

21         and permanent injunctive relief, rescission of contracts, restitution, redress,

22         disgorgement, statutory damages (including aggravated statutory damages), civil

23         penalties, attorney fees, and other equitable relief for Defendants' violations of Section

24         5(a) of the CAN-SPAM Act, 15 U.S.C. § 7704(a) (2004) and Sections 17529.5 and

25         17200 of the California Business and Professions Code.

26

Complaint                              Page 2 of 23

**JURISDICTION AND VENUE**

3.    Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §§ 45(a), 53(b), 57b, 7704(a), 7706(a), (d), and (f) (2004), and 28 U.S.C. §§ 1331, 1337(a), and 1345 (2004).

4.    This Court has supplemental jurisdiction over the subject matter of the state law claims pursuant to 28 U.S.C. § 1367(a) (2004).

5.    Venue in the United States District Court for the Northern District of California is proper under 15 U.S.C. §§ 53(b), 57b, and 7706(a), (d), and (f) (2004), and 28 U.S.C. § 1391(b), (c) and (d) (2004).

**INTRADISTRICT ASSIGNMENT**

6.    The claims are based on violations that were directed at residents of San Francisco and elsewhere, and on business transactions in Contra Costa County and elsewhere.

**PLAINTIFFS**

7.    Plaintiff, the **Federal Trade Commission**, is an independent agency of the United States Government created by statute.  15 U.S.C. § 41 *et seq*. (2004).  The Commission is charged, *inter alia*, with enforcement of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a) (2004), which prohibits unfair or deceptive acts or practices in or affecting commerce. The Commission is also charged with enforcing various provisions of the CAN-SPAM Act as if a violation of the CAN-SPAM Act  "were an unfair or deceptive act or practice proscribed under section 18(a)(1)(B) of the [FTC Act] (15 U.S.C. 57a(a)(1)(B))." 15 U.S.C. § 7706(a) (2004).  The Commission is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the CAN-SPAM Act and to secure such other equitable relief as may be appropriate. 15 U.S.C. §§ 53(b), 57b, 7706(a), and (d) (2004).

8.    Plaintiff, **the People of the State of California**, is one of the fifty sovereign states of the United States.  Bill Lockyer is the duly elected Attorney General acting for the People of

1    the State of California and brings this action in his official capacity as its chief law

2    enforcement officer.  An Attorney General of a state is authorized to initiate federal

3    district court proceedings to enjoin violations of Section 5 of the CAN-SPAM Act,

4    15 U.S.C. § 7704 (2004), and, in each such case, to obtain actual monetary loss or

5    damages on behalf of residents of California of up to $250 per violation, and to obtain

6    such further and other relief as the Court deems appropriate, including treble damages

7    and attorney fees.  15 U.S.C. § 7706(f) (2004).  The Attorney General of California is

8    also charged with the enforcement of section 17529.5 of the California Business and

9    Professions Code, which prohibits deceptive practices connected to unsolicited

10   commercial email.  Cal. Bus. & Prof. Code § 17529.8 (West 1997 & Supp. 2004); *Id.*

11   § 17529.5(b)(1), as amended, Cal. Stats. 2004, c. 571 (S.B.1457), § 1.  The Attorney

12   General, in the name of the People of the State of California, is authorized to seek

13   statutory damages of $1,000 for each email sent in violation of section 17529.5, up to

14   $1 million per incident (*id.* § 17529.5(b), as amended, Cal. Stats. 2004, c. 571

15   (S.B.1457), § 1), as well as injunctive relief and civil penalties of up to $2,500 per

16   violation.  Cal. Bus. & Prof. Code §§ 17535 & 17536 (West 1997).  The Attorney

17   General of California also enforces section 17200 *et seq.* of the California Business and

18   Professions Code, which prohibits unfair competition, including unlawful, unfair or

19   fraudulent business acts or practices, and is empowered to seek injunctive relief and civil

20   penalties of up to $2,500 per violation.  Cal. Bus. & Prof. Code §§ 17204 & 17206

21   (West 1997).

22                                          **DEFENDANTS**

23   9.    Defendant **Optin Global, Inc.**, also doing business as Vision Media Limited Corp., USA

24         Lenders Network, USA Lenders, and USA Debt Consolidation Service ("Optin Global"),

25         is a Delaware Corporation registered as a foreign corporation in California with its

26         principal place of business located at 6466 Livia Avenue, Temple City, California,

Complaint                                Page 4 of 23

91780.  Since at least January 1, 2004, Optin Global has formulated, directed, controlled, or participated in the acts or practices set forth in this complaint.  Optin Global transacts or has transacted business in the Northern District of California and elsewhere.

10.     Defendant **Vision Media Limited Corp.**, also doing business as Optin Global, USA Lenders Network, USA Lenders, and USA Debt Consolidation Service ("Vision Media"), is a Commonwealth of Dominica corporation with its mailing address of 8 Copthall, P.O. Box 2331, Roseau, St. George, 00152, Commonwealth of Dominica. Since at least January 1, 2004, Vision Media has formulated, directed, controlled, or participated in the acts or practices set forth in this complaint.  Vision Media transacts or has transacted business in the Northern District of California and elsewhere.

11.     Defendant **Rick Yang**, also known as Qing Kuang Yang, ("Yang"), is a principal and owner of Optin Global and Vision Media.  Since at least January 1, 2004, he has formulated, directed, controlled, or participated in the acts or practices set forth in this complaint.  In connection with matters alleged herein, he has transacted business in the Northern District of California and elsewhere.

12.     Defendant **Peonie Pui Ting Chen** ("Chen") is the president of Optin Global.  Since at least January 1, 2004, she has formulated, directed, controlled, or participated in the acts or practices set forth in this complaint.  In connection with matters alleged herein, she has transacted business in the Northern District of California and elsewhere.

13.     Defendants Optin Global and Vision Media have operated as a common business enterprise in commission of the violations of the FTC Act, the CAN-SPAM Act, and sections 17529.5 and 17200 *et seq.* of the California Business and Professions Code.

14.     Optin Global, Vision Media, Yang, and Chen are referred to jointly in this complaint as the "Defendants."

15.     Defendants' client, Abacus Enterprises, is located in this District.

16.     Defendants have initiated commercial email to consumers located in this District.

**COMMERCE**

17.    At all times relevant to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44 (2004).

**DEFINITIONS**

18.    "**Electronic mail message**" (or "**email**") "means a message sent to a unique electronic mail address."  15 U.S.C. § 7702(6) (2004).

19.    "**Electronic mail address**" "means a destination, commonly expressed as a string of characters, consisting of a unique user name or mailbox (commonly referred to as the "local part") and a reference to an Internet domain (commonly referred to as the "domain part"), whether or not displayed, to which an electronic mail message can be sent or delivered."  15 U.S.C. § 7702(5) (2004).

20.    "**Commercial electronic mail message**" (or "**commercial email**") "means any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including content on an Internet website operated for a commercial purpose)."  15 U.S.C. § 7702(2) (A) (2004).

21.    "**Header information**" "means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message."  15 U.S.C. § 7702(8) (2004).

22.    "**Initiate**," "when used with respect to a commercial email message, means to originate or transmit such message or to procure the origination or transmission of such message."

15 U.S.C. § 7702(9) (2004).

23.    "**Procure**," "when used with respect to the initiation of a commercial email message,

1    means intentionally to pay or provide other consideration to, or induce, another person to

2    initiate such a message on one's behalf."  15 U.S.C. § 7702(12) (2004).

3    24.    "**Protected computer**" means a computer which is used in interstate or foreign

4    commerce or communication, including a computer located outside the United States that

5    is used in a manner that affects interstate or foreign commerce or communication of the

6    United States.  15 U.S.C. § 7702(13) (2004); 18 U.S.C. § 1030(e)(2)(B) (2004).

7    25.    "**Sender**" "when used with respect to a commercial electronic mail message, means a

8    person who initiates such a message and whose product, service, or Internet website is

9    advertised or promoted by the message."  15 U.S.C. § 7702(16)(B) (2004).

10                          **DEFENDANTS' COURSE OF CONDUCT**

11   26.    Since at least January 1, 2004, and continuing to the present, Defendants have initiated

12   the transmission of hundreds of thousands of commercial email messages.  Defendants'

13   commercial email messages advertise a variety of products and services, including auto

14   warranties, pharmaceutical products, online college degree programs, and mortgage

15   services.  The commercial email messages contain hyperlinks to websites operated by

16   Defendants that promote these various products and services.

17   27.    In numerous instances, Defendants' commercial email messages violate Section 5 of the

18   CAN-SPAM Act, 15 U.S.C. § 7704 (2004).  The messages contain false header

19   information, fail to notify recipients of their opt-out rights, fail to include functioning

20   opt-out mechanisms, contain deceptive subject headings, fail to identify that they are

21   advertisements, and/or fail to include the sender's valid postal address.  In addition,

22   Defendants often continue to send commercial email to recipients even after the

23   recipients have requested not to receive any future commercial email messages from

24   Defendants.

25   28.    Since March 2004, members of the public have forwarded to the FTC over 1,870,000

26   commercial email messages that advertise Defendants' websites.

29.   Since January 2004, California residents have forwarded to the California Attorney General's office over 1,000 commercial email messages that advertise Defendants' websites.

30.   Many of Defendants' commercial email messages promote mortgage services.  These messages contain hyperlinks to Defendants' websites, such as *www.myeasysavings.com*, where consumers are asked to provide personal information to obtain information about mortgage services.  The websites state that consumers' personal information will then be shared with multiple mortgage brokers and/or banks who will contact the consumers regarding the mortgage services they offer.

31.   Defendants in fact sell the information submitted by consumers on their mortgage services websites to other companies, known as lead companies, including such lead companies as Abacus Enterprises and Infinite Leads Marketing.  The lead companies then sell the information to other lead companies, such as The Loan Page, Inc., Huling, Inc., and others.  In the end, these intermediary lead companies sell the information to mortgage lenders and brokers, such as Indy Mac Bank, Ameriquest Mortgage Company, BLS Funding, and Mortgage South, who then contact consumers to offer mortgage services.

32.   Abacus Enterprises, of El Cerrito, California, which is located in this District, purchased approximately 69,000 leads from Defendants in 2004.

**Defendants Initiate Commercial Email Messages**

33.   The primary purpose of Defendants' commercial email messages is the advertisement or promotion of products or services, including content on Internet websites operated by Defendants for commercial purposes.

34.   Defendants are "initiators" with respect to an email message when they either originate or transmit a message themselves or they procure the origination or transmission of a message through payments or other consideration, or inducements, to their agents or

1    affiliates.

2    35.    Defendants are "senders" with respect to an email message when they initiate a message

3    and it is Defendants' products, services, or websites that are being advertised or

4    promoted by such message.

5    **Defendants Use Deceptive Subject Headings**

6    36.    In numerous instances, Defendants initiate commercial email messages that promote

7    mortgage services with subject headings that deceptively suggest that the recipients have

8    already submitted applications, have accounts, or have prior relationships with the

9    sender.  Some examples of these subject headings include "About Your M[o]rtgage

10   application," "Customer ID 54056," "Account info," or  "Your Application

11   Confirmation."

12   37.    In numerous instances, recipients of Defendants' commercial email messages have not

13   already submitted applications, do not have accounts, and do not have prior relationships

14   with the sender.

15   **Defendants Fail to Identify Their Messages as Advertisements**

16   38.    The text of numerous commercial email messages initiated by Defendants that promote

17   mortgage services fails to conspicuously identify the messages as advertisements or

18   solicitations.  Rather, the content of many of these messages falsely suggests that the

19   recipients have already inquired about mortgage services, made some type of prior

20   contact, or have a prior relationship with the company.

21   39.    For example, one of Defendants' email campaigns states in part:

22         Thank you for your m.ortgage [sic] application, which we received
           yesterday.  We are glad to confirm that your application was
23         accepted and you can get as low as a 3% fixed rate.

24   **Defendants Use False or Misleading Headers**

25   40.    Commercial email messages initiated by Defendants contain header information,

26   including "from" and "reply-to" lines.  The "from" line purports to identify who sent the

email message; the "reply-to" line identifies to whom a return email message will be sent if the email recipient clicks on the "reply" button in the recipient's email software.

41.   Defendants have initiated commercial email messages that contain false header information.  For example, in numerous instances, Defendants have initiated commercial email messages which include false information as to the originating email address.

42.   In numerous instances, the email addresses listed in the "from" lines or "reply-to" lines of Defendants' email messages have not been valid email accounts at the time the messages were sent.

43.   Many recipients who attempt to reply to Defendants' commercial email messages find that messages sent to the email addresses listed are rejected and returned as "undeliverable."

44.   The false or misleading header information has impaired law enforcement's ability to identify, locate, or respond to the persons who initiated the electronic mail messages and to investigate alleged violations.

45.   In addition, in numerous instances Defendants' commercial email messages have come from email accounts obtained under false or fraudulent pretenses or representations.  For example, some of Defendants' commercial email messages contain email addresses in the "from" line that include domain names such as Hotmail.com, MSN.com, AOL.com, and Yahoo.com.  The access to these email accounts was obtained under false pretenses because using these email accounts to send commercial email messages violates the terms of use policies of these email account providers.

**Defendants Fail to Notify Recipients of Right to Opt-Out**

46.   Many of Defendants' commercial email messages fail to include **any** notification to recipients of their ability to decline receiving future email messages from Defendants, and they fail to include a reply email address or other mechanism that recipients can use to decline receiving future email messages from Defendants.

47. In other instances, Defendants' commercial email messages include only vague indications of recipients' rights, with statements such as, "No thanks," "Not for you?," "Reference Options," "REM," and "Future Options."

**Defendants Fail to Provide Functioning Opt-Out Mechanisms
and Defendants Fail to Honor Opt-Out Requests**

48. Defendants' commercial email messages and their web pages sometimes include hyperlinks that purport to provide recipients with mechanisms to request not to receive future commercial email messages from Defendants at the recipients' email addresses. In some instances the hyperlinks are not activated and do not lead to functioning web pages or other mechanisms that could receive recipients' opt-out requests.

49. Even when the links lead to functioning web pages, recipients who use the links and follow the steps to request that their email addresses be removed from Defendants' email mailing list, continue to receive commercial email messages from Defendants more than 10 business days after making such requests. In numerous instances, recipients continue to receive commercial email initiated by Defendants for weeks and months after submitting their requests not to receive future commercial email messages from Defendants.

**Defendants Fail to Include a Valid Postal Address**

50. In numerous instances, Defendants fail to provide a valid physical postal address in their commercial email messages. Many of Defendants' commercial email messages fail to include **any** postal address at all for the sender of the email messages.

51. When Defendants' commercial email messages include a postal address, it is often a fake postal address. In many instances, Defendants' commercial email messages include a postal address in Canada, Box 40937, Bedford, Nova Scotia, B4A 3Z2, that does not exist. Recipients who try to contact Defendants by sending letters to this postal address receive such letters back in the return mail marked "undeliverable as addressed" or they

1    receive no response at all.

2

3

4    **<u>VIOLATIONS OF THE CAN-SPAM ACT</u>**

5    52.    The CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.* (2004), became effective on January 1,

6           2004, and has since remained in full force and effect.

7    53.    Section 5(a)(1) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(1) (2004), states:

8                  It is unlawful for any person to initiate the transmission, to a
                   protected computer, of a commercial electronic mail message, or a
9                  transactional or relationship message, that contains, or is
                   accompanied by, header information that is materially false or
10                 materially misleading.  For the purposes of this paragraph –

11                 (A) header information that is technically accurate but includes an
                   originating electronic mail address, domain name, or Internet
12                 Protocol address the access to which for purposes of initiating the
                   message was obtained by means of false or fraudulent pretenses or
13                 representations shall be considered materially misleading   . . . .

14   54.    Section 5(a)(6) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(6) (2004), states:

15                 For purposes of [section 5(a)(1)], the term "materially," when used
                   with respect to false or misleading header information, includes the
16                 alteration or concealment of header information in a manner that
                   would impair the ability of an Internet access service processing
17                 the message on behalf of a recipient, a person alleging a violation
                   of this section, or a law enforcement agency to identify, locate, or
18                 respond to a person who initiated the electronic mail message or to
                   investigate the alleged violation, or the ability of a recipient of the
19                 message to respond to a person who initiated the electronic
                   message.
20

21   55.    Section 5(a)(2) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(2) (2004), states:

22                 It is unlawful for any person to initiate the transmission to a
                   protected computer of a commercial electronic mail message if
23                 such person has actual knowledge, or knowledge fairly implied on
                   the basis of objective circumstances, that a subject heading of the
24                 message would be likely to mislead a recipient, acting reasonable
                   under the circumstances, about a material fact regarding the
25                 contents or subject matter of the message (consistent with the
                   criteria used in enforcement of section 5 of the Federal Trade
26                 Commission Act (15 U.S.C. 45)).

56.   Section 7(e) of the CAN-SPAM Act, 15 U.S.C. § 7706(e) (2004), states that in any action to enforce compliance through an injunction with Section 5(a)(2) and other specified sections of the CAN-SPAM Act, the FTC need not allege or prove the state of mind required by such sections.

57.   Section 7(f)(2) of the CAN-SPAM Act, 15 U.S.C. § 7706(f)(2) (2004), states that in a civil action brought by a state attorney general to enjoin violations of Section 5 of the CAN-SPAM Act, 15 U.S.C. § 7704 (2004), the attorney general shall not be required to allege or prove the state of mind required by Section 5(a)(2) and other specified sections of the CAN-SPAM Act.

58.   Section 5(a)(3) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(3) (2004), states:

> It is unlawful for any person to initiate the transmission to a protected computer of a commercial electronic mail message that does not contain a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that –
> (i) a recipient may use to submit, in a manner specified in the message, a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from that sender at the electronic mail address where the message was received; and
> (ii) remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message.

59.   Section 5(a)(4)(A) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(4)(A) (2004), states:

> If a recipient makes a request using a mechanism provided pursuant to [Section 5(a)(3) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(3),] not to receive some or any commercial electronic mail messages from such sender, then it is unlawful --
> (i) for the sender to initiate the transmission to the recipient, more than 10 business days after the receipt of such request, of a commercial electronic mail message that falls within the scope of the request.

60.   Section 5(a)(5)(A) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(5)(A) (2004), states:

> (A)  It is unlawful for any person to initiate the transmission of any commercial electronic mail message to a protected computer unless the message provides –
> (i) clear and conspicuous identification that the message is an

advertisement or solicitation;
(ii) clear and conspicuous notice of the opportunity under [section 5(a)(3)] to decline to receive further commercial electronic mail messages from the sender; and
(iii) a valid physical postal address of the sender.

**COUNT I - False Header Information**
**(By Federal Trade Commission and the People of the State of California)**

61.    In numerous instances, Defendants have initiated the transmission, to protected computers, of commercial email messages that contain, or are accompanied by, materially false or materially misleading header information, including but not limited to:

a.    messages that include originating electronic mail addresses, domain names, or Internet Protocol addresses the access to which for purposes of initiating the messages was obtained by means of false or fraudulent pretenses or representations, or

b.    "from" lines (the line identifying or purporting to identify the person initiating the messages) that do not accurately identify any person who initiated the messages.

62.    Therefore, Defendants' acts or practices violate Section 5(a)(1) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(1) (2004).

**COUNT II - Deceptive Subject Heading**
**(By Federal Trade Commission and the People of the State of California)**

63.    In numerous instances, Defendants have initiated the transmission, to protected computers, of commercial email messages containing subject headings likely to mislead recipients, acting reasonably under the circumstances, about material facts regarding the contents or subject matter of the messages.

64.    Therefore, Defendants' acts or practices violate Section 5(a)(2) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(2) (2004), as modified by Sections 7(e) and 7(f)(2) of the CAN-SPAM Act, 15 U.S.C. § 7706(e) and §7706(f)(2) (2004).

**COUNT III - Failure to Notify Recipients of or Include Opt-Out Mechanisms**
**(By Federal Trade Commission)**

65.   In numerous instances, Defendants have initiated the transmission, to protected computers, of commercial email messages that advertise or promote Defendants' Internet websites, products or services, and do not include:

a.   a clear and conspicuous notice of the recipient's opportunity to decline to receive further commercial electronic mail messages from Defendants at the recipient's electronic mail address; and/or

b.   a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient could use to submit a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from Defendants at the electronic mail address where the message was received, and that remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message.

66.   Therefore, Defendants' acts or practices violate Section 5(a)(5)(A)(ii) and/or Section 5(a)(3) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(5)(A)(ii) and/or § 7704(a)(3) (2004).

**COUNT IV - Pattern or Practice of Failing to Notify Recipients of
or Include Opt-Out Mechanism
(By the People of the State of California)**

67.   Defendants have engaged in a pattern or practice of initiating the transmission, to protected computers, of commercial email messages that advertise or promote Defendants' Internet websites, products or services, and do not include:

a.   a clear and conspicuous notice of the recipient's opportunity to decline to receive further commercial electronic mail messages from Defendants at the recipient's electronic mail address; and/or

b.   a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient could use to submit a reply

electronic mail message or other form of Internet-based communication
requesting not to receive future commercial electronic mail messages from
Defendants at the electronic mail address where the message was received, and
that remains capable of receiving such messages or communications for no less
than 30 days after the transmission of the original message.

68.    Therefore, Defendants' acts or practices violate Section 5(a)(5)(A)(ii) and/or Section
5(a)(3) of the CAN-SPAM Act, 15 U.S.C. § 7704(a)(5)(A)(ii) and/or § 7704(a)(3)
(2004).

**COUNT V - Failure to Honor Opt-Out Requests**
**(By Federal Trade Commission)**

69.    In numerous instances, Defendants have initiated the transmission of commercial email
messages, that advertise or promote Defendants' Internet websites, products or services,
to recipients' email addresses, more than 10 business days after receiving requests from
those recipients, that were submitted through reply email messages or through other
forms of Internet-based communication contained in Defendants' commercial email
messages, not to receive future commercial electronic mail messages from Defendants at
the recipients' electronic mail addresses.

70.    Therefore, Defendants' acts or practices violate Section 5(a)(4)(A)(i) of the CAN-SPAM
Act, 15 U.S.C. § 7704(a)(4)(A)(i) (2004).

**COUNT VI - Pattern or Practice of Failing to Honor Opt-Out Requests**
**(By the People of the State of California)**

71.    Defendants have engaged in a pattern or practice of initiating the transmission of
commercial email messages, that advertise or promote Defendants' Internet websites,
products or services, to recipients' email addresses, more than 10 business days after
receiving requests from those recipients, that were submitted through reply email
messages or through other forms of Internet-based communication contained in

Defendants' commercial email messages, not to receive future commercial electronic

mail messages from Defendants at the recipients' electronic mail addresses.

72.   Therefore, Defendants' acts or practices violate Section 5(a)(4)(A)(i) of the CAN-SPAM

Act, 15 U.S.C. § 7704(a)(4)(A)(i) (2004).


**COUNT VII - Failure to Identify Email as Advertisement or Solicitation**
**(By Federal Trade Commission)**

73.   In numerous instances, Defendants have initiated the transmission, to protected

computers, of commercial email messages that do not include clear and conspicuous

identification that the messages are advertisements or solicitations.

74.   Therefore, Defendants' acts or practices violate Section 5(a)(5)(A)(i) of the CAN-SPAM

Act, 15 U.S.C. § 7704(a)(5)(A)(i) (2004).


**COUNT VIII - Pattern or Practice of Failing to Identify Email as**
**Advertisement or Solicitation (By the People of the State of California)**

75.   Defendants have engaged in a pattern or practice of initiating the transmission, to

protected computers, of commercial email messages that do not include clear and

conspicuous identification that the messages are advertisements or solicitations.

76.   Therefore, Defendants' acts or practices violate Section 5(a)(5)(A)(i) of the CAN-SPAM

Act, 15 U.S.C. § 7704(a)(5)(A)(i) (2004).


**COUNT IX - Failure to Include Valid Physical Postal Address**
**(By Federal Trade Commission)**

77.   In numerous instances, Defendants have initiated the transmission, to protected

computers, of commercial email messages that advertise or promote Defendants' Internet

websites, products, or services and do not include the senders' valid physical postal

address.

78.   Therefore, Defendants' acts or practices violate Section 5(a)(5)(A)(iii) of the CAN-

1    SPAM Act, 15 U.S.C. § 7704(a)(5)(A)(iii) (2004).

2
     **COUNT X - Pattern or Practice of Failing to Include Valid Physical Postal Address**
3    **(By the People of the State of California)**

4    79.    Defendants have engaged in a pattern or practice of initiating the transmission, to

5           protected computers, of commercial email messages that advertised or promoted

6           Defendants' Internet websites, products, or services and did not include the senders' valid

7           physical postal address.

8    80.    Therefore, Defendants' acts or practices violate Section 5(a)(5)(A)(iii) of the CAN-

9           SPAM Act, 15 U.S.C. § 7704(a)(5)(A)(iii) (2004).

10                          **<u>VIOLATIONS OF CALIFORNIA LAW</u>**

11   81.    Section 17529.5 of the California Business and Professions Code became effective

12          January 1, 2004, providing:

13                  It is unlawful for any person or entity to advertise using a
                    commercial e-mail advertisement either sent from California or
14                  sent to a California electronic mail address under any of the
                    following circumstances:
15
                    (a) The commercial e-mail advertisement contains or is
16                  accompanied by a third party's domain name without the
                    permission of the third party.
17
                    (b) The commercial e-mail advertisement contains or is
18                  accompanied by falsified, misrepresented, obscured, or forged
                    header information.  This paragraph does not apply to truthful
19                  information used by a third party who has been lawfully authorized
                    by the advertiser to use that information.
20
                    (c) The commercial e-mail advertisement has a subject line that a
21                  person knows would be likely to mislead a recipient, acting
                    reasonably under the circumstances, about a material fact
22                  regarding the contents or subject matter of the message.

23          Cal. Bus. & Prof. Code § 17529.5 (West 1997 & Supp. 2004).

24   82.    Section 17529.5 was amended effective January 1, 2005, to provide, in pertinent part:

25                  (a) It is unlawful for any person or entity to advertise in a
                    commercial e-mail advertisement either sent from California or
26                  sent to a California electronic mail address under any of the
                    following circumstances: . . .

Complaint                              Page 18 of 23

(2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

(3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

(b) (1) (A) In addition to any other remedies provided by any other provision of law, the following may bring an action against a person or entity that violates any provision of this section:

(i) The Attorney General. . . .

(B) A person or entity bringing an action pursuant to subparagraph (A) may recover either or both of the following:

(i) Actual damages.

(ii) Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident.

(C) The recipient, an electronic mail service provider, or the Attorney General, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs. . . .

Cal. Stats. 2004, c. 571 (S.B.1457), § 1.


**COUNT XI – Falsified, Misrepresented, or Forged Header Information**
**(By the People of the State of California)**

83.   Defendants advertised by means of commercial e-mail advertisements that were either

sent from California or sent to a California electronic mail address and that contained or

were accompanied by falsified, misrepresented or forged header information.

84.   Therefore, Defendants' conduct during 2004 violated section 17529.5(b) of the California

Business and Professions Code.  Cal. Bus. & Prof. Code § 17529.5(b) (West 1997 &

Supp. 2004).  Defendants' conduct during 2005 violates section 17529.5(a)(2) of the

California Business and Professions Code.  Cal. Bus. & Prof. Code § 17529.5(a)(2) as

amended, Cal. Stats. 2004, c. 571 (S.B.1457), § 1.

**COUNT XII – Misleading Subject Line**
**(By the People of the State of California)**

85.   Defendants advertised by means of commercial email advertisements that were either sent from California or sent to a California electronic mail address and that had subject lines likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

86.   Therefore, Defendants' conduct during 2004 violated section 17529.5(c) of the California Business and Professions Code.  Cal. Bus. & Prof. Code § 17529.5(c) (West 1997 & Supp. 2004).  Defendants' conduct during 2005 violates section 17529.5(a)(3) of the California Business and Professions Code.  Cal. Bus. & Prof. Code § 17529.5(a)(3) as amended, Cal. Stats. 2004, c. 571 (S.B.1457), § 1.

**COUNT XIII – Unfair Competition**
**(By the People of the State of California)**

87.   Defendant have engaged in unfair competition as defined in section 17200 of the California Business and Professions Code.  Such acts of unfair competition include, but are not limited to, violation of the CAN-SPAM Act and section 17529.5 of the California Business and Professions Code, as alleged in paragraphs 61-86 of this complaint.

**CONSUMER INJURY**

88.   Individuals and businesses throughout the United States, including throughout the State of California have suffered, and continue to suffer, substantial injury as a result of Defendants' unlawful acts or practices.  In addition, Defendants have been unjustly enriched as a result of their unlawful practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**THIS COURT'S POWER TO GRANT RELIEF**

89.   Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) (2004), authorizes this Court to issue a

permanent injunction against Defendants' violations of the FTC Act, and, in the exercise

of its equitable jurisdiction, to order such ancillary relief as a temporary injunction,

preliminary injunction, consumer redress, rescission, restitution, and disgorgement of

profits resulting from Defendants' unlawful acts or practices, and other remedial

measures.  A violation of the CAN-SPAM Act may be remedied in the same manner as a

violation of the FTC Act. 15 U.S.C. § 7706(a) and (d) (2004).

90.    Section 19 of the FTC Act, 15 U.S.C. § 57b (2004), authorizes this Court to grant the

FTC such relief as the Court finds necessary to redress injury to consumers or others

resulting from Defendants' violations of the CAN-SPAM Act, including but not limited

to rescission and reformation of contracts and the refund of money.

91.    Section 7(f) of the CAN-SPAM Act, 15 U.S.C. § 7706(f) (2004), authorizes this Court to

grant the People of the State of California injunctive relief, damages (including treble

damages for aggravated conduct), and attorneys fees.

92.    Sections 17203 and 17204 of the California Business and Professions Code provides that

the Attorney General of California may seek and the Court may make such orders or

judgments permanently restraining and enjoining Defendant, its successors, agents,

representatives, employees, and all other persons who act under, by, through, or on behalf

of any of them, or any of them, from engaging in any acts of unfair competition in

violation of section 17200.  Cal. Bus. & Prof. Code §§ 17203 & 17204 (West 1997).

93.    Section 17535 of the California Business and Professions Code provides that the

Attorney General of California may seek and the Court may make such orders or

judgments, including the appointment of a receiver, as may be necessary to prevent the

use or employment by any person, corporation, firm, partnership, joint stock company, or

any other association or organization of any practices which violate section 17529.5.

Cal. Bus. & Prof. Code § 17535 (West 1997).

94.    Section 17529.5, as applied to violations occurring on or after January 1, 2005, provides

1    that the Attorney General of California may seek and the Court may award liquidated

2    damages of one thousand dollars ($1,000) for each commercial email advertisement

3    transmitted in violation of section 17529.5, up to one million dollars ($1,000,000) per

4    incident.  Cal. Bus. & Prof. Code § 17529.5(b) as amended, Cal. Stats. 2004, c. 571

5    (S.B.1457), § 1.

6    95.   Section 17536 provides that the Attorney General of California may seek and the Court

7          may award a civil penalty of up to $2,500 for each violation of section 17529.5.  Cal.

8          Bus. & Prof. Code § 17536 (West 1997).

9    96.   Section 17206 provides that the Attorney General of California may seek and the Court

10         may award a civil penalty of up to $2,500 for each violation of section 17200.  Cal. Bus.

11         & Prof. Code § 17206 (West 1997).

12                                    **PRAYER FOR RELIEF**

13         WHEREFORE, Plaintiffs Federal Trade Commission and the People of the State of

14   California request that this Court, as authorized by Sections 13(b) and 19 of the FTC Act, 15

15   U.S.C. §§ 53(b) and 57b (2004), Section 7 of the CAN SPAM Act, 15 U.S.C. § 7706 (2004),

16   Sections 17203, 17204, 17206, 17529.6, 17535 & 17536 of the California Business and

17   Professions Code, and pursuant to its own equitable powers:

18         1.     Award Plaintiffs such preliminary injunctive and ancillary relief as may be

19   necessary to avert the likelihood of injury during the pendency of this action and to preserve the

20   possibility of effective final relief, including by not limited to, temporary and preliminary

21   injunctions, and an order freezing Defendants' assets;

22         2.     Permanently enjoin Defendants from violating Section 5 of the CAN SPAM Act,

23   15 U.S.C. § 7704 (2004), and Sections 17200 and 17529.5 of the California Business and

24   Professions Code as alleged in this complaint;

25         3.     Enter judgment against Defendants and in favor of Plaintiffs for each violation

26   alleged in this complaint;

1    4.    Award such relief as the Court finds necessary or appropriate to redress injury to

2    consumers or others resulting from Defendants' violations of law, including, but not limited to,

3    rescission or reformation of contracts, restitution, disgorgement of ill-gotten gains, the refund of

4    monies paid, and damages;

5    5.    Award Plaintiff the People of the State of California civil penalties, attorneys fees

6    and statutory damages on behalf of its residents; and

7    6.    Award Plaintiffs the costs of bringing this action, as well as such other additional

8    relief as the Court may determine to be just and proper.

9

10   Dated: _____        Respectfully Submitted,

11                                          WILLIAM BLUMENTHAL
                                            General Counsel
12
                                            _____
13                                          PATRICIA POSS
                                            QUISAIRA A. WHITNEY
14                                          Attorneys for Plaintiff Federal Trade Commission

15                                          BILL LOCKYER
16                                          Attorney General of the State of California
                                            ALBERT NORMAN SHELDEN
17                                          Senior Assistant Attorney General
                                            MARGARET REITER
18                                          Supervising Deputy Attorney General

19
                                            _____
20                                          IAN K. SWEEDLER (169969)
                                            Deputy Attorney General
21                                          Office of the Attorney General

22                                          Attorneys for Plaintiff
                                            The People of the State of California
23

24

25

26

Complaint                        Page 23 of 23